**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OSEAS PONS, | Civil Action No. 12-7475 (DRD) |
| Petitioner, | |
| v. | **OPINION** |
| CHARLES WARREN, | |
| Respondents. | |

**APPEARANCES**:

> OSEAS PONS, #238109C
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625
> *Petitioner Pro Se*

> SARA BETH LIEBMAN, ASSISTANT PROSECUTOR
> UNION COUNTY PROSECUTOR
> 32 Rahway Avenue
> Elizabeth, New Jersey 07202
> *Attorneys for Respondents*

**Debevoise, Senior U.S. District Judge**

Oseas Pons filed an Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. §

2254. Pons challenges a judgment of conviction filed in the Superior Court of New Jersey, Union

County, on October 8, 2004, imposing a term of 35 years in prison, with a 29.75-year period of

parole ineligibility, after a jury found him guilty of aggravated sexual assault, sexual assault,

kidnapping, possession of a weapon for an unlawful purpose and unlawful possession of a weapon.

The State filed an Answer and the state court record.   After carefully reviewing the arguments of

the parties and the state court record, this Court will deny habeas relief and decline to issue a certificate of appealability.

## I.   BACKGROUND

### A.  The Crimes

Between August 24, 1998, and August 30, 1998, three women were separately kidnapped and raped in Plainfield, New Jersey.   The first incident occurred in the early morning hours of August 24, 1998.   Two Hispanic men in a black sports car with a white dog picked up D.S. as she was walking home.   The men took D.S. to a secluded area, removed her clothing, and sexually assaulted her.   D.S. eventually escaped by running away from the car (without wearing clothing) and banging on doors of nearby homes, while yelling "rape."   The second incident took place at about 1:00 a.m. on August 28, 1998, as S.J. was attempting to use a phone booth at a gas station. A white two-door truck with tinted windows pulled into the gas station.   A man got out of the truck, asked S.J. where Grant Avenue was located, and then held a box-cutter to S.J.'s neck and instructed her to get into the truck, which was occupied by three other men.   The men identified themselves as Mario, Jose, Joseph, and Edward, and said they were from Mexico.   The truck drove off and then stopped.   Each of the four men sexually assaulted S.J.   They gave S.J.'s clothing back to her, drove away, stopped again, and one of the men took her out of the truck, covered her eyes, walked her down the street, and left her there.   The third incident occurred on August 30, 1998, at 3:00 a.m.   A white truck pulled up to J.B. as she walked down East Front Street.   J.B. thought she recognized the man in the truck as Mario, whom she possibly knew from school, and she asked him for a ride.   When she got into the truck, she saw four other Hispanic men inside. One of the men put a knife to her neck as the truck stopped at Shell gas station, while another went

2

into the gas station and purchased condoms.   The truck then traveled down Leland Avenue for about seven minutes and stopped.   All five of the men sexually assaulted J.B.   They left her on the street wearing a t-shirt.   She found her shorts on the street, walked back to the Shell station, and called the police.

On September 15, 1998, J.B. saw the white truck involved in her assault on the street in Plainfield.   She wrote down the license plate number and gave it to the police.   The police investigation led to co-defendant Emilio Giron, who had been involved in a traffic infraction with a white Chevy Blazer.   The police arrested Giron after J.B. identified him in a photo array and the police found the white Chevy Blazer with the license plate number provided by J.B. at Giron's residence.   The police eventually arrested Eric Quintanilla, who confessed to the sexual assault on S.J. and told the police that Giron, Giron's brother Carlos, and Oseas Pons were also involved in that assault.   He told the police that Giron, Carlos, a man named Luis, and Pons had committed the assault on J.B.   On October 2, 1998, the police obtained an arrest warrant for Pons.   They found a black car and a white dog at his residence.

## B.   The State Court Proceedings

The indictment charged Pons with 17 counts with respect to the three women, D.S., S.J., and J.B.   The indictment also named Emilio Giron and Eric Quintanilla.   Quintanilla entered into a plea agreement which required him to testify against Giron.   Although Quintanilla's plea agreement did not require him to testify against Pons, the state subpoenaed him and he testified at Pons' trial.   After a six-day trial, a jury found Pons guilty of Counts One through Thirteen, and acquitted him on Counts Fourteen through Seventeen.   On October 8, 2004, the trial court sentenced Pons to 35 years in prison, with 29.75 years of parole ineligibility.   Pons appealed.   On

3

October 3, 2007, the Superior Court of New Jersey, Appellate Division, affirmed in an unpublished

opinion.  See State v. Pons, 2007 WL 2847536 (N.J. Super. Ct., App. Div., Oct. 3, 2007).  The

New Jersey Supreme Court denied certification on December 6, 2007.  See State v. Pons, 193 N.J.

276 (2007) (table).

      Pons filed a post-conviction relief petition in the trial court on June 11, 2008.  After

conducting an evidentiary hearing at which defense counsel testified, the trial court denied the

petition in an order filed on September 28, 2009.  Pons appealed, and on May 7, 2012, the

Appellate Division affirmed the order denying post-conviction relief.  The New Jersey Supreme

Court denied certification on November 9, 2012.  See State v. Pons, 212 N.J. 460 (2012) (table).

**D.   Procedural History of § 2254 Petition**

      The Clerk received Pons' original § 2254 Petition on December 3, 2012.  (ECF No. 1.)

After this Court notified Pons in accordance with Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000),

Pons filed his all-inclusive Amended Petition.  (ECF No. 6.)  The Amended Petition raises the

following grounds, which are set forth below verbatim:

> Ground One:   THE JOINDER OF COUNTS INVOLVING THREE SEPARATE
> OFFENSES WAS EXTREMELY PREJUDICIAL TO THE DEFENDANT AND
> DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO MOVE TO SEEK
> A SEVERANCE.  THE PREJUDICE WAS EXACERBATED BY THE TRIAL
> COURT'S FAILURE TO INSTRUCT THE JURY TO CONSIDER EACH
> COUNT INDIVIDUALLY.
>
> Ground Two:   THE TRIAL COURT DENIED DEFENDANT A FAIR TRIAL BY
> FAILING TO PROVIDE THE JURY WITH AN ADEQUATE INSTRUCTION
> ON ACCOMPLICE LIABILITY IN RELATION TO THE KIDNAPPING
> CHARGES, THEREBY FORECLOSING ANY POSSIBILITY THAT
> DEFENDANT COULD BE CONVICTED OF THE LESSER-INCLUDED
> OFFENCE OF CRIMINAL RESTRAINT.

Ground Three:   THE DEFENDANT WAS DENIED THE EFFECTIVE
ASSISTANCE OF TRIAL COUNSEL IN THAT TRIAL COUNSEL FAILED TO
PROPERLY INVESTIGATE AND PREPARE FOR TRIAL.

> A) TRIAL COUNSEL FAILED TO CONDUCT AN ADEQUATE
> INVESTIGATION.

> B) TRIAL COUNSEL FAILED TO CONSULT WITH DEFENDANT IN
> A MEANINGFUL MANNER.

> C) TRIAL COUNSEL FAILED TO ARGUE THAT QUINTANILLA'S
> ORIGINAL STATEMENT WAS COERCED.

> D) TRIAL COUNSEL WAS INEFFECTIVE DURING PLEA
> NEGOTIATIONS.

> E) TRIAL COUNSEL FAILED TO MOVE TO HAVE THE DNA
> RESULTS EXCLUDED.

(ECF No. 6 at 16-17.)

The State filed an Answer and the state court record.   Although given time to do so, Pons

did not file a traverse.

## II.   STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court

to grant a habeas petition to a state prisoner.   See Cullen v. Pinholster, 131 S.Ct. 1388, 1398

(2011).   Section 2254(a) permits a court to entertain only claims alleging that a person is in state

custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. §

2254(a).   Where a state court adjudicated petitioner's federal claim on the merits,[1] as in this case,

---

[1] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court
proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2)

a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).    The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.   See Harrington v. Richter, 131 S.Ct. 770, 785 (2011).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.   See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. White v. Woodall, 134 S.Ct. 1697, 1702 (2014) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."   Williams, 529 U.S. at 405-06.   Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the

_____

resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel,* 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id., 529 U.S. at 413.

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## III.   DISCUSSION

### A.   Improper Joinder (Ground One)

In Ground One, Pons asserts that "the joinder of counts involving three separate offenses was extremely prejudicial[,] counsel was ineffective in failing to move to seek a severance[, and] the prejudice was exacerbated by the trial court's failure to instruct the jury to consider each count individually." (ECF No. 6 at 16.) As factual support, he states that he was accused of three separate offenses, committed on different dates, involving three different victims and not all the same co-defendants. He maintains that trying these crimes together was extremely prejudicial because each offense involved sexual assaults on women and "the jury could well have concluded that if there was evidence li[n]king the petitioner to any one of them, he must have been guilty of them all." Id. He argues that counsel was "prejudicially ineffective" because there could not have been a legitimate strategy for failing to move to sever. The State argues that the joinder was

7

proper under New Jersey law because the evidence of the other crimes would have been admissible even if Pons had been tried separately for each offense, Pons was not prejudiced by the joinder, the trial judge properly instructed the jury that the defendant was entitled to have each count considered separately, and counsel was not ineffective because the failure to seek severance was trial strategy.

"Improper joinder does not, in itself, violate the Constitution.   Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."   United States v. Lane, 474 U.S. 438, 446 n.8 (1986).   The Supreme Court explained in Zafiro v. United States, 506 U.S. 532 (1993), that "an important element of a fair trial is that a jury consider *only* relevant and competent evidence bearing on the issue of guilt or innocence [but] a fair trial does not include the right to exclude relevant and competent evidence."   Id. at 540 (citation and internal quotation marks omitted).

Pons presented Ground One to the Appellate Division on direct appeal, arguing that the evidence of other sexual assaults would not have been admissible had there been separate trials, that the prejudice outweighed the probative value of the evidence, that trial counsel was ineffective in failing to seek severance, and that the instructions failed to follow the model jury charge on multiple offenses.   (ECF No. 14-1 at 24-34.)   The Appellate Division noted that "[i]f the evidence of the several offenses would have been admissible in each separate trial, severance will generally be denied as the defendant would not suffer additional prejudice by virtue of a joint trial."   Pons, 2007 WL 2847536 *6.   The Appellate Court determined that the evidence of the two other offenses would have been admissible in each separate trial:

> Defendant's defense strategy regarding the attacks on the second and third victims was that, although present, he did not partake in the attack and that the victims only remembered him because he was present. Had separate trials been held, evidence of the first attack on D.S. by Quintanilla and defendant would have been admissible against defendant at a trial on the two subsequent attacks to show defendant intended to go out with a group late at night to prowl the streets and pick up a woman for the purpose of sexual gratification.

> Defendant's defense respecting the first attack was predicated on the argument that D.S., who had been under the influence of drugs and had a criminal record, misidentified him . . .   Although a different vehicle was used in the subsequent attacks, which involved more individuals, the similarity of the attacks, the timing, location, type of victim, and approach (by vehicle) were so similar in kind that they would have been admitted into evidence as other crimes evidence, had the cases been tried separately.

Id.

The Appellate Court further found that because the probative value of the other crimes evidence outweighed its potential for undue prejudice, Pons "would not have met his burden to establish, by a preponderance of the evidence, that the joinder was prejudicial."   Id. at *8.   As to the instructions, the Appellate Division found that the trial court properly instructed the jury to assess each charge separately, but the trial judge did not specifically tell the jury that it could not consider the other crimes evidence to determine that Pons was predisposed to commit the crimes charged.   However, the Appellate Court rejected the challenge to the instructions and the claim that counsel was ineffective in failing to seek severance as lacking merit:

> Perhaps it would have been more preferable to instruct the jury to consider the other crimes evidence dealing with the two later attacks in determining whether defendant was identified by D.S. in the first and that they could consider the evidence of the first attack to determine whether defendant intended to participate in the second and third attacks.   Even with the aid of 20-20 afterthought, it is doubtful that such an instruction would have aided defendant's case, particularly when considered in the light of the charge actually given, which conveyed the message that defendant is entitled to have each count considered separately by the evidence relevant and material to that particular charge . . .

Accordingly, we are convinced that had defendant moved for a severance the motion would have been denied. We are equally convinced that the evidence of guilt was so overwhelming that had the three offenses been tried separately, there is no reasonable probability that the outcome would have been different. Thus, we reject defendant's contention that he received ineffective assistance of counsel.

Pons, 2007 WL 2847536 *9.

In this case, the New Jersey courts' denial of Pons' severance challenge on direct appeal did not "result[] in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." Lane, 474 U.S. at 446. Accordingly, it was not contrary to, or an unreasonable application of Supreme Court precedent. See Herring v. Meachum, 11 F.3d 374, 377-78 (2nd Cir. 1993) ("where a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during the joint trial"); United States ex rel. Laws v. Yeager, 448 F.2d 74, 82 (3d Cir. 1971); United States ex rel. Evans v. Follette, 364 F.2d 305 (2nd Cir. 1966). Moreover, the ineffective assistance of counsel claim respecting the failure to seek severance fails because "counsel cannot be deemed ineffective for failing to raise a meritless claim." Ross v. District Attorney of the County of Allegheny, 672 F.3d 198, 211 n.9 (3d Cir. 2012)) (quoting Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000)).

**B.    Instructions on Accomplice Liability (Ground Two)**

In Ground Two Pons asserts that "the trial court denied [him] a fair trial by failing to provide the jury with an adequate instruction on accomplice liability in relation to the kidnapping charges, thereby foreclosing any possibility that [he] could be convicted of the lesser-included offense of criminal restraint." (ECF No. 6 at 16.) As factual support, he states that, although the trial court explained that he could be found guilty as a principal or an accomplice, "the court failed

10

to explain, except with regard to robbery, how accomplice liability related to the petitioner's role in each of the offenses." Id. In addition, he maintains that the instruction was deficient because the court did not instruct the jurors that only the actions of Pons could be considered in determining his guilt, the court did not instruct the jurors that the actions of others could not be taken into account when the jury considered whether Pons was a principal, and the court did not outline the jury's choices between the charged crimes and the appropriate lesser-included offense of criminal restraint in the accomplice liability context.

In Waddington v. Sarausad, 555 U.S. 179 (2009), the Supreme Court rejected a habeas petitioner's claim that an accomplice liability instruction violated due process. The Court summarized the law regarding the constitutionality of state court instructions:

> Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation. Rather, the defendant must show both that the instruction was ambiguous and that there was "'a reasonable likelihood'" that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt . . . . In making this determination, the jury instruction "may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, supra, at 72. Because it is not enough that there is some "slight possibility" that the jury misapplied the instruction, Weeks v. Angelone, 528 U.S. 225, 236 . . . (2000), the pertinent question "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' " Estelle, supra, at 72, 112 S.Ct. 475 (quoting Cupp, supra, at 147, 94 S.Ct. 396).

Waddington, 555 U.S. at 190-191 (citations and internal quotation marks omitted).

Moreover, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v McGuire, 502 U.S. 62, 71-72 (1991); see also Engle v. Isaac, 456

11

U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief").

Pons challenged the adequacy of the accomplice instruction on direct appeal. He argued that, although the trial court gave the standard accomplice liability charge at the start of the instructions on the substantive charges, the instructions were fatally deficient for the reasons outlined by Pons in Ground Two and because the trial court failed to instruct the jury on criminal restraint, a lesser included offense of kidnapping, based on the state of mind of Pons, rather than the actions of others. The Appellate Division found that the failure to instruct on criminal restraint was not error because "the evidence fail[ed] to present a rational basis to acquit [Pons] of kidnapping and convict him of criminal restraint[.]" Pons, 2007 WL 2847536 at *11. The Appellate Division rejected the claim that the trial judge erred by failing to provide an adequate instruction on accomplice liability as it related to the kidnapping charges and ruled "that the judge correctly charged and amply explained accomplice liability as it related to the kidnapping charges." Id.

Here, Pons has not shown that there was a reasonable likelihood that the jury applied the instructions in a way that relieved the state of its burden of proving the elements of kidnapping, or that the absence of an instruction on criminal restraint deprived him of a defense which federal law provided to him. See Williams v. Beard, 637 F. 3d 195, 223-25 (3d Cir. 2011) (rejecting § 2254 claim that the instruction unconstitutionally broadened the scope of accomplice liability because he failed to show that there was a reasonable likelihood that the jury applied the instruction in a manner that relieved the state of its burden of proving every element beyond a

12

reasonable doubt); <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 110 (3d Cir. 1997) ("[T]he jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct understate law with respect to the elements of an offense and defenses to it.") (citations omitted).   Moreover, Pons cites no Supreme Court authority for the proposition that the jury instructions were contrary to or an unreasonable application of a clearly established federal right, as determined by the Supreme Court.   He is therefore not entitled to habeas relief on Ground Two.

## C.      Ineffective Assistance of Counsel (Ground Three)

As the trial and appellate courts acknowledged in Pons' case, the Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."   U.S. Const. amend. VI.   The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.   <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).   A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.   <u>Id.</u> at 687.   First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."   <u>Id.</u> at 687-88.   To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are

13

alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" Hinton v. Alabama, 134 S.Ct. 1081, 1083 (2014) (per curiam). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland at 693. [2]  To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." Hinton, 134 S.Ct. at 1083. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 1089 (quoting Strickland, 466 U.S. at 695).

In his Amended Petition, Pons maintains that counsel was deficient in failing to conduct an adequate investigation, failing to meaningfully consult with him, failing to argue that Quintanilla's initial statement to police was coerced, failing to move to exclude the DNA results, and in conducting plea negotiations. Pons raised these ineffective assistance of counsel claims in his petition for post-conviction relief. The trial judge conducted an evidentiary hearing at which defense counsel testified and rejected each ground in an oral opinion. The Appellate Division considered and also rejected each ground.

---

[2] The reasonable probability standard is less demanding than the preponderance of the evidence standard. See Nix v. Whiteside, 475 U.S. 157, 175 (1986); Baker v. Barbo, 177 F.3d 149, 154 (3d Cir. 1999).

14

### 1.   Failure to Conduct an Adequate Investigation

Pons argues that defense counsel deficiently failed to investigate whether DNA evidence was absent from his car and that, if counsel had conducted this investigation, he would have been able to move to exclude photos of Pons's car parked outside his mother's house and of his dog. The Appellate Division rejected this claim on the ground that "[m]ore is required, however, than the bald assertion that such an investigation would have produced evidence, or in this case, the absence of evidence, that would have been favorable to the defense."   Pons, 2012 WL 1569816 at *2.   Accordingly, the court found that Pons had not shown either deficient performance or prejudice.

The record establishes that Pons did not present evidence during his post-conviction relief hearing with respect to absence of blood or DNA material in his car.   He has not shown that counsel was constitutionally deficient for failing to mount a defense based on the lack of physical evidence located in his vehicle, and he has not shown that the failure to present such a defense affected the outcome of the trial.   The New Jersey courts' adjudication of this ground was not contrary to, or an unreasonable application of Strickland and it was not based on an unreasonable determination of the facts in light of the evidence presented.   See 28 U.S.C. § 2254(d)(1) and (2).

### 2.   Failure to Meaningfully Consult

Pons contends that trial counsel's testimony confirming that he met with Pons at the county jail on three occasions and his testimony that he could not recall whether he went over all the discovery with Pons shows that counsel was deficient in failing to consult with him in a meaningful manner during pre-trial preparation.   The Appellate Division rejected this ground because it was not supported by the record:   "The [trial] judge credited trial counsel's testimony that he met with

defendant on multiple occasions, both in the jail and the courthouse, reviewed the discovery materials with him, including the victims' statements, and extensively discussed trial strategy . . . [W]e . . . accept the judge' conclusion that trial counsel consulted with defendant in a meaningful, sufficient, and professional manner as the attorney described."   <u>Pons</u>, 2012 WL 1569816 at *3.

This Court is required to presume the correctness of these factual findings, and Pons has failed to rebut the findings by clear and convincing evidence.   <u>See</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.   The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").   Pons has not shown that the findings were an unreasonable determination of the facts in light of the evidence presented at the evidentiary hearing under 28 U.S.C. § 2254(d)(2) and he has not shown that the state courts' rejection of this ground was contrary to, or an unreasonable application of <u>Strickland</u> under § 2254(d)(1).

### 3.   Failure to Argue that Codefendant's Initial Statement Was Coerced

As factual support for this ground, Pons asserts that, in the middle of his testimony for the prosecution, co-defendant Quintanilla stated that he wished to stop testifying and the court threatened to hold him in contempt and warned him that his plea could be voided, but defense counsel failed to argue that Quintanilla's statement had been coerced.   The Appellate Division found that the record did not support Pons' claim "as trial counsel testified that he vigorously argued that very point to the jury; the trial transcript of his closing statement corroborates his testimony."   <u>Pons</u>, 2012 WL 1569816 at *3.

16

Again, this Court is required to presume the correctness of this factual finding.   This Court has reviewed the testimony and cross-examination of Quintanilla, counsel's closing statement during trial, and counsel's testimony at the post-conviction relief hearing.   Quintanilla testified on direct that, although Pons was in the front seat of the vehicle when Quintanilla and Carlos sexually assaulted D.S. in the back seat, he did not know what happened when Giron and Pons got into the back seat with D.S.   The prosecutor showed Quintanilla the statement he had given to the police after his arrest, asked him if it refreshed his recollection and Quintanilla answered "Yes," but when the prosecutor asked him what Pons was doing in the vehicle with the girl, Quintanilla testified, "I wasn't looking at him."   (ECF No. 14-17 at 33.)   Later, during his direct examination, Quintanilla asked what would happen if he "refused to continue with this?" and the trial judge excused the jury.   (ECF No. 14-17 at 49.)   The judge told Quintanilla that the court would hold him in contempt if he refused to answer the questions and that the state could request revocation of the plea agreement, id. at 50, but defense counsel explained that the plea agreement only required Quintanilla to testify against Giron.   The prosecutor acknowledged that this was so and that the state had no intention of revoking the plea agreement.   Id. at 53.

On cross-examination, Quintanilla testified that he gave the statement because the detective promised him that he would receive less time in prison if he gave a statement; he also admitted that he would not have made the statement, but for the promise of less time.   Id. at 61-62. Quintanilla also testified on cross-examination that his plea agreement required him to testify truthfully against Emilio Giron.   Id. at 66-67.   He testified that he did not see Pons perform sexual acts with D.S. or S.J.   Id. at 77.

17

In his closing statement, defense counsel argued that, although Pons was present when the women were raped, he was not involved in assaulting them.   Defense counsel argued that, although Quintanilla stated that Pons had assaulted the women at the time he took the plea, at the time he testified, "[h]e ha[d] nothing over his head anymore," and he was telling "the truth" to "make amends," when he testified that he didn't see Pons sexually assault the women.   (ECF No. 14-19 at 34-35.)

Pons has failed to rebut the state courts' factual finding that defense counsel argued that Quintanilla's statement to police implicating Pons was coerced by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).   Moreover, given the testimony of counsel, the state courts' rejection of this claim was not based on an reasonable determination of the facts in light of the evidence presented under § 2254(d)(2).

**4.   Failure to Move to Exclude DNA Evidence**

Pons argues that counsel was ineffective in failing to move to exclude the testimony of the state's expert, who testified that the DNA evidence did not exclude Pons and that the probability that the DNA was not Pons was 6,370 to one.   The Appellate Division found that counsel was not deficient in failing to object to the admission of the DNA testimony because there was no legal basis for denying admission of the evidence, which was both relevant and admissible at trial.   Pons is not entitled to habeas relief on this ground because "counsel cannot be deemed ineffective for failing to raise a meritless claim."   Ross, 672 F.3d at 211 n.9 (quoting Werts, 228 F.3d at 178).

**5.   Ineffectiveness in Plea Negotiations**

Pons asserts that counsel's response to the state's plea offer during trial was deficient because counsel assured him that the state's proofs were weak and that acquittal was assured, and

18

counsel failed to ask Pons' family to wait outside of the courtroom.   The Appellate Division rejected this claim on the ground that the allegedly deficient performance was not supported by the record:

> Defendant now contends that he rejected the plea bargain based on his attorney's assurances that he would be acquitted, or that he rejected the plea bargain because his family was in the courtroom and he was reluctant to enter into a plea agreement in their presence.   There is no support for the claim that counsel gave defendant a false sense of hope regarding the outcome of the trial; just defendant's bald assertion.   Defendant may have had such expectations - but if he did, it was not the product of any act or omission by his attorney.
>
> As defendant points out in his brief, trial counsel during the evidentiary hearing said that "I could have swore [sic] that there was a moment that he wanted to take [the plea agreement] and, you know, I always thought because his family was in the room that stopped him.   And I - and I - if I would have known then that I could just tell the family to wait outside, have his mom wait outside, I think [defendant] would have took [sic] the deal.   That was a tough one."   Counsel was clearly speculating as to defendant's thought processes.
>
> Significantly, counsel did not say that defendant actually expressed an interest in accepting a plea bargain, or even that he felt self-conscious because of the presence of his family.   It was defendant's responsibility to tell his attorney that he wanted to engage in plea negotiations, not up to the attorney to guess.   If defendant did not say anything about the offer, or that he was uncomfortable about his family's presence, the responsibility for the choice to reject the offer rests with him. Inaction in the face of a client's silence is not ineffective assistance of counsel.   It would be unreasonable to add to an attorney's professional responsibilities the expectation that he or she read a client's mind.

Pons, 2012 WL 1569816 at *3.

This Court is required to presume the correctness of the Appellate Division's factual determinations and Pons has not rebutted these findings with clear and convincing evidence.   See 28 U.S.C. § 2254(e)(1).   Moreover, the transcript of the evidentiary hearing conclusively shows that counsel did not assure Pons of an acquittal.   Counsel testified:

> This is - what's interesting about this case to me really was, and I can recall the specific moment, the prosecutor in the case, during the middle of the trial, offered us an incredible plea bargain.   I mean, I think it was something like five or six years and No Early Release Act, and I sat there, I looked at Oseas and I said, you know, you already have about two years in, and I sat there in the back of the room in that back chamber with him in the jail, and this is after one of the conferences and I - we spoke about this on and on, I said, you know, if you took a deal on this now, the jury has been sworn but they're willing to give you, you could end up with only a five or six-year sentence.   He was just confident in how we were doing and he didn't take it.

(ECF No. 14-23 at 5.)

Pons has not shown that the adjudication of this claim by the Appellate Division was based on an unreasonable determination of the facts in light of the evidence presented at the evidentiary hearing.   Accordingly, he is not entitled to habeas relief under 28 U.S.C. § 2254(d)(2).

To summarize, the trial court and Appellate Division used the clearly established Supreme Court precedent to consider Pons' ineffective assistance of counsel claims, and nothing before this Court indicates that the application of the *Strickland* prongs to those claims was unreasonable or even incorrect.   In addition, Pons has not shown that the findings of fact with respect to counsel's performance were unreasonable in light of the evidence presented in the post-conviction relief proceeding.   Accordingly, the New Jersey courts' conclusion that Pons failed to establish that there is a reasonable probability that the outcome of the proceeding would have been different, but for counsel's deficient performance, was not contrary to, or an unreasonable application of *Strickland's* prejudice prong.   Pons is not entitled to habeas relief pursuant to § 2254(d)(1) or (d)(2) on his ineffective assistance of counsel claims.

D.     **Certificate of Appealability**

Pons has not made a substantial showing of the denial of a constitutional right.   Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B).   *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV.   CONCLUSION

This Court dismisses the Amended Petition with prejudice and denies a certificate of appealability.

           __s/Dickinson R. Debevoise_____
           DICKINSON R. DEBEVOISE
               U.S.S.D.J.

Dated:   February 5 , 2015

21